UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                              Case No.: 17-11954-7

    HEATHER E. MODEEN,

        Debtor.

---

    GERALD J. MANION,

        Plaintiff,
    v.                                                              Adversary No.: 17-71

    HEATHER E. MODEEN,

        Defendant.

---

## **MEMORANDUM DECISION**

Defendant Heather Modeen ("Defendant" or "Modeen") filed a chapter 7 petition and received a discharge. Plaintiff Gerald Manion ("Plaintiff" or "Manion") filed this adversary proceeding seeking a determination that a student loan is nondischargeable.

### **STATEMENT OF FACTS**

Defendant is in her mid-30s, has a daughter, and works full-time as an office manager. She also works a few hours a week at a second job. Pay from her primary employment is about $740 per week gross and $613 net. The second job generates about $75 per week. Her 2017 adjusted gross income—excluding an IRA distribution—was $40,997 ("AGI").

Plaintiff is the Chief Financial Officer of Manion's Wholesale Building Supplies, Inc. (the "Company"). Defendant began working for the Company in

2001. She left in 2003 but returned to the Company in 2005 and remained in its employ until 2016. After leaving the Company in 2016, Modeen worked briefly as an aide at Benedictine Heath Center. Her Schedules suggest she earned $11,766 in five months at that job. Modeen then took her current job. It pays more than the job at Benedictine, although about $5,000 less than she was earning at the Company.

In July 2014, Modeen met with a financial counselor to discuss her financial problems. Based on that meeting, she concluded that filing a bankruptcy was the most reasonable approach to addressing her situation. Concerned that Plaintiff, her boss, looked down on bankruptcy and that it could affect her job, she decided to talk to him before filing. He responded that rather than file bankruptcy, he would make loans to her to refinance her student loans and to refinance or pay other debts. The current iteration of the student loan refinance was signed on March 24, 2016 (the "Manion Loan"). The student loans were two qualified educational loans before refinancing with Plaintiff. The parties agree the refinanced loans retained their character as an educational loan. The Agreement required Defendant to make monthly payments to Plaintiff of $694.47 on the 24th of each month until September 24, 2021. It also stipulated that upon default, Plaintiff may declare the entire loan due immediately.

Modeen made payments of $760 per month to Manion until January 2017. The payments went toward the Manion Loan and the other personal loans. The outstanding balance on the Manion Loan was then $34,231.55.

2

Manion forgave the personal loans in the amount of $20,000 and sent Modeen a 1099 for cancellation of indebtedness income in 2016. Defendant argues that her income and expenses are such that payment of the Manion Loan would be an undue hardship on her and her dependent daughter.

Defendant's daughter, age 18, lives with her. Modeen received back child support in 2017 in the total amount of $6,320.40. The daughter graduated from high school in 2017. Though she intends to return to school, she is currently unemployed and not in school. She has increased medical expenses because of a chronic illness that, at present, is controlled well with medication. Modeen anticipates receiving payments on the child support arrearage for another year in the total amount of $7,829.92.

## DISCUSSION

Section 523(a)(8) of the Bankruptcy Code provides the bankruptcy discharge does not discharge "an educational . . . loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8)(A)(i). Individual debtors generally receive no discharge for "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 11 U.S.C. § 523(a)(8)(B). The Code prevents the discharge of such student loan debt "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).

The phrase "undue hardship" is not defined in the Code. The Seventh Circuit adopted the test for finding "undue hardship" from *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987) (per curiam). To support a finding of an undue hardship under the *Brunner* test, this Court must find:

(1) That the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [herself] and [her] dependents if forced to repay the loans.

(2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) That the debtor has made good faith efforts to repay the loans.

*In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993).

The debtor has the burden of establishing each element of the test by a preponderance of the evidence. *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 777 (7th Cir. 2002).

1. *Minimal Standard of Living*

The Court must first address whether Defendant would still be able to maintain a "minimal" standard of living if she is compelled to pay the Manion Loan. This first prong "should serve as the starting point . . . since information regarding the debtor's current financial situation generally will be concrete and readily obtainable." *Roberson*, 999 F.2d at 1135. Put simply, the basic question is whether the Defendant's present income and expenses permit repayment.

See *Nelsen v. Educ. Credit Mgmt. Corp. (In re Nelson)*, 404 B.R. 892, 894 (Bankr. E.D. Wis. 2009).

The Manion Loan Agreement provides that upon default Manion may declare the entire balance due and payable. He has done so. He says that as of January 23, 2017, the balance due was $34,231.55.

The Court finds that Defendant cannot maintain a minimal standard of living if compelled to pay the Manion Loan by its terms when it is now due in full and, as discussed below, not subject to any of the federal student loan repayment programs. Neither can Modeen maintain a minimal standard of living if compelled to resume monthly payments of $694.47. Defendant's expenses are $3,010.29 per month, not including payment on the student loan. Her net income is $3,010.29, including a child support payment that will stop within a year. She can barely cover her living expenses. While some reductions in expenses may be possible, they would not be enough to pay off the Manion Loan. It would be impossible for her to cover an additional payment in satisfaction of the Manion Loan.

### 2. *Additional, Exceptional Circumstances*

The second prong requires Plaintiff to show she is presently unable to repay the debt and that there are "additional, exceptional circumstances" making it improbable she will ever be able to pay. *Roberson*, 999 F.2d at 1136. This requirement "properly recognizes the potential continuing benefit of an education, and imputes to the meaning of 'undue hardship' a requirement that the debtor show [her] dire financial condition is likely to exist for a significant

5

portion of the repayment period." *Id.* at 1135. Modeen must show there is a "certainty of hopelessness" in that she will not be able to fulfill her commitment at any point. *Id.* at 1136. Bankruptcy courts have interpreted this to require "additional circumstances which make it reasonably certain that the debtor's circumstances are unlikely to improve." *Nelsen*, 404 B.R. at 894-95 (*quoting Hoskins v. Educ. Mgmt. Corp.* (*In re Hoskins*), 292 B.R. 883, 887 (Bankr. C.D. Ill. 2003)).

In earlier cases, the Seventh Circuit set the bar of the second prong high. In *Roberson*, the court listed the factors it believed showed a debtor would lack the ability to repay. *Roberson*, 999 F.2d at 1137; *see also Goulet*, 284 F.3d at 778. Such factors included psychiatric problems, lack of usable job skills, and severely limited education. *Goulet*, 284 F.3d at 778. In *Goulet*, a convicted felon with alcohol and substance abuse problems did not establish "additional, exceptional circumstances" necessary to satisfy this prong. Instead, he was "an intelligent man" who did not lack usable job skills and could "apply himself when he desire[d]." *Id.* at 779. He had "simply failed to diligently pursue employment such that he would be able to alleviate his financial burdens." *Id.* In *Roberson*, the debtor had "a bleak forecast for the near future" as he was unemployed, had lost his driver's license after a second drunk driving conviction, and had wrist and back injuries. *Roberson*, 999 F.2d at 1137. However, those circumstances were only temporary, as his medical condition was not "insurmountable," he would be able to regain his driver's license, and

6

neither the injuries nor the loss of license prevented him from finding employment in the future. *Id.*

More recently, the Seventh Circuit has relented on this prong. In *Krieger*, the Court of Appeals reinstated the discharge of a student loan. The debtor was a 53-year-old living in a rural area who had not held a job since 1986. *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013). As the *Krieger* Court put it, "[t]hat's not the sort of background employers are looking for. There is no reason to think that a brighter future is in store." *Id.*

Modeen has not shown the exceptional hopeless circumstances that would justify a finding in her favor under section 523(a)(8). She is employed and has held various jobs over the last five years, including as an office manager and as an assistant in a health center. She has marketable skills in human resources and in healthcare. She holds an Associate of Arts degree with a concentration in Accounting from the University of Phoenix. She earned a technical diploma, with honors, and certificates in gerontology in 2017 and is qualified to help provide care to aging adults. She has shown persistence in finding and obtaining employment. When it became apparent that a career change to gerontology and assistance to the aging may be personally satisfying but not as fruitful financially, she returned to more gainful employment. She also took a second job to supplement that income.

Defendant asserts her circumstances are unique because she now makes about $5,000 less per year and her rent costs have increased $120 per month.

7

She has a new job that requires her to travel 30 miles round trip, and she needs a car to take her daughter to Minneapolis to see a health care specialist.

First, courts have criticized debtors who claim expenses for care of adult live-in children. *Logan v. N.C. State Educ. Assistance Auth. (In re Logan)*, 263 B.R. 796, 800 (Bankr. W.D. Ky. 2000) (reasoning debtor could "expect ongoing contributions to her household expenses from her children as they reach an age . . . where they can maintain employment"). Courts have been more sympathetic to debtors who have minor children with health issues, but that is not Modeen's situation. *See England v. United States (In re England)*, 264 B.R. 38, 52 (Bankr. D. Idaho 2001). Defendant's daughter is no longer a student or a minor, and she has medication that effectively treats her condition. It would be reasonable to expect the daughter would obtain some employment to contribute to the additional expenses of a second household member.

The rent increase and decrease in pay are simply not "exceptional" as the Seventh Circuit has defined the term. Modeen's circumstances are not exceptional even under the more relaxed standard in *Krieger*. In *Krieger*, the pro se debtor lived in a rural community, lacked internet access, and was too poor to move in search of better employment. *Krieger*, 713 F.3d at 883. Her car was more than a decade old and apparently in such bad shape it was unusable as a means of transportation. *Id.*

The facts here are wholly unlike those in *Krieger*. Defendant has skills and certifications that she uses in her employment. The job market where Defendant lives may not rival that of a major city, but as shown by her

8

continuous employment, there are certainly opportunities for people with her skill set.

Though not explicitly required by precedent, many cases where courts discharged student loans addressed a debtor who was either nearing retirement age or handicapped.[1] The emphasis in those cases is that the debtors' physical conditions permanently limited their employment options. Defendant is neither nearing retirement nor handicapped.

Modeen simply does not meet the profile of a debtor whose student loan should be discharged in full under *Brunner*. She can work full time and has articulated no circumstance that seriously limits her employability.[2] She is young, has many working years ahead of her, and her income will likely increase over time. While inflation may increase some expenses, others should be reduced either by her daughter contributing to household expenses or, at some point, living independently. In sum, there is no additional circumstance here that would justify a finding that Modeen's situation will not improve or that she will have no ability to make payment over time.

---

[1] *Myhre v. U.S. Dep't of Educ. (In re Myhre)*, 503 B.R. 698 (Bankr. W.D. Wis. 2013) (discharging loans for a quadriplegic debtor); *Kline v. United States (In re Kline)*, 155 B.R. 762, 764-65 (Bankr. W.D. Mo. 1993) (discharging loans of debtor who was diagnosed with depression, anxiety, and panic attacks); *Dresser v. Univ. of Maine (In re Dresser)*, 33 B.R. 63, 64-65 (Bankr. D. Me. 1983) (discharging loans of debtor with PTSD); *Ackley v. Sallie Mae Student Loans (In re Ackley)*, 463 B.R. 146, 150 (Bankr. D. Me. 2011) (discharging loans where 60-year-old had age-related health problems).

[2] *See O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 566 (7th Cir. 2003), citing *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324 n.4 (3d Cir. 2001) (noting debtor had an obligation to pursue employment elsewhere if her opportunities at her current job were limited).

### 3. *Good Faith Effort to Repay*

The last prong of the *Brunner* test requires the court to determine whether a debtor has made a good faith effort to repay the loans. *Roberson*, 999 F.2d at 1132. The touchstone of this analysis is whether a debtor tried to "obtain employment, maximize income, and minimize expenses." *Goulet*, 284 F.3d at 779; *Roberson*, 999 F.2d at 1136. The inquiry also scrutinizes whether the debtor "willfully or negligently" caused a default, or whether the debtor's condition resulted from "factors beyond [her] reasonable control." *Roberson*, 999 F.2d at 1136.

According to her tax returns, Modeen makes between $40,000 and $42,000 per year. At the time of her petition, her monthly take-home pay, including child support, was $3,010.29. Her monthly expenses are about $3,010.29, not including payment on the Manion Loan.

Though she could reduce some of her non-essential expenses to pay the loan, Modeen has clearly made a good faith effort to repay her creditors. If she eliminated the costs for entertainment, charity, and support of her daughter, she would have an extra $285 per month. Still, none of her expenses are outrageous, especially in consideration of the fact she supports her daughter.

Modeen's current employment is her best option. She began working at that job in May 2016 and at her second job in June 2017. Defendant earned a technical degree near the end of 2017 which qualifies her to work as a healthcare aide, but her potential income in that field is lower than her current

10

income. That she sought out additional employment speaks favorably to her efforts to repay her creditors.

In summary, Modeen has shown a good faith effort to repay creditors. Her expenses are reasonable given her family circumstances. Her current employment is likely her best option, and she has made efforts to increase her income with her second job.

### 4. *Partial Discharge*

Defendant demonstrated no exceptional circumstance and has therefore failed to meet all the elements of *Brunner*. But that does not necessarily mean the student loan is completely nondischargeable. Several courts that addressed student loans under *Brunner* have taken alternate approaches.[3] Rather than holding the entire student loan nondischargeable, some courts have granted a partial discharge.[4] Those courts have acknowledged the Code does not explicitly authorize that kind of relief, but "[recognize] that an all-or-nothing approach to the dischargeability of student debt contravenes Congress' intent

---

[3] Yet another approach taken by the courts is a loan-by-loan procedure in which one or more student loans may be discharged, but not necessarily all. Originally, Defendant had multiple student loans but consolidated them into one through the refinance. This approach may have been applicable to the original loans. Because Defendant now only has one loan, it is no longer applicable to this case and will not be addressed any further. *See Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312-14 (Bankr. S.D.N.Y. 2002).

[4] *Educ. Credit Mgmt. Corp. v. Blair (In re Blair)*, 291 B.R. 514, 518 (B.A.P. 9th Cir. 2003) (holding that the court must preliminarily find an undue hardship before granting a partial discharge, but not reaching whether debtor must satisfy all three prongs of the *Brunner* test for a partial discharge).

in granting bankruptcy courts equitable authority" to enforce the Code. *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1174 (9th Cir. 2003). Though the Seventh Circuit has not directly addressed partial discharges,[5] other courts have found the authority to discharge a portion of the loan under section 105(a) and based on a debtor's means and ability to pay.

The Sixth Circuit endorsed a partial discharge in *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 440 (6th Cir. 1998).[6] There, the court ruled that even if a debtor fails to meet her burden under section 523(a)(8), the debt may be partially discharged "where facts and circumstances require intervention in the financial burden on the debtor." *Id.* at 439. In doing so, the court found debtors had *not* minimized expenses in every way possible and their financial prospects would likely improve with time. *Id.* The Sixth Circuit ruled the bankruptcy court had the discretion under section 105 to grant a partial discharge even where the debtor had not proved all the elements of an undue hardship.

*Hornsby* has been criticized for "seem[ing] to swallow the statutory exception to discharge mandated by Congress in the case of student loans." *See Saxman*, 325 F.3d at 1174 (*quoting East v. Educ. Credit Mgmt. Corp. (In re*

---

[5] The Seventh Circuit has, however, *deferred* student loans for a two-year period where debtor had drunk driving convictions that temporarily constrained his ability to earn an income. *See Roberson*, 999 F.2d at 1138.

[6] *See also In re Saxman*, 325 F.3d at 1168 (adopting *Hornsby* but holding debtor must establish an undue hardship).

12

*East)*, 270 B.R. 485, 493 (Bankr. E.D. Cal. 2001)). Taken at face value, the ruling in *Hornsby* gives courts license to sidestep the explicit language in section 523(a)(8) by discharging a student loan where a debtor has demonstrated no "undue hardship." Tempering the *Hornsby* ruling, the Ninth Circuit determined a partial discharge is appropriate "as to the portion of the debt" that meets section 523(a)(8). *In re Saxman*, 325 F.3d at 1174.

There are no clear guidelines on when a court should grant a partial discharge on student loans. In general, it should be "reserved for appropriate circumstances" when "the equities of the situation weigh distinctly in favor of the debtor." *In re England*, 264 B.R. at 52. In *England*, the court permitted a partial discharge because of the debtor's poor health and lack of insurance. *Id.* Another court granted a partial discharge where a debtor had made sincere efforts to repay the loan and had a 6-year-old child with special needs. *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 199 (Bankr. N.D. Ohio 2000).

The Court finds the equities of this case favor the granting of a partial discharge. The Court finds the as-written terms of the student loan would impose an undue hardship. Defendant simply does not have room in her budget to pay the balance of $34,231.55 that is due in full, nor could she reasonably be expected to pay $694.47 per month. The parties agree she cannot continue to make that monthly payment. Defendant lives paycheck to paycheck and has minimal savings.

Given her age and earning potential, the Court finds Defendant could reasonably repay some portion of the loan. She is employed and has marketable experience. Her income will increase to some extent as she gains more experience. Though her daughter is still young enough to rely on her for financial help, her expenses will eventually decrease as her daughter becomes more independent. Her daughter could certainly seek some employment—even part-time—to contribute something toward expenses.

This leaves the question of how much Modeen can reasonably pay. Many cases addressing the dischargeability of student loans do so in the context of federal repayment plans.[7] Modeen's student loans would have been subject to those plans until Manion persuaded her to let him refinance the loans. Once refinanced, the loans were no longer eligible for those programs. Nor did Defendant have a right to elect into those repayment plans. In that sense, the stakes for this debtor are higher than many of the other debtors who seek to discharge student loans. If this Court held the debt entirely nondischargeable, then Modeen would be left with no recourse. She could be forced into the impossible position of needing to make an immediate payment of about $35,000 simply because Plaintiff chose to accelerate the loan. Without the

---

[7] *Durrani v. Educ. Credit Mgmt. Corp. (In re Durrani)*, 311 B.R. 496 (Bankr. N.D. Ill. 2004); *Bard-Prinzing v. Higher Educ. Assistance Found. (In re Bard-Prinzing)*, 311 B.R. 219 (Bankr. N.D. Ill. 2004); *Larson v. United States (In re Larson)*, 426 B.R. 782 (Bankr. N.D. Ill. 2010); *Carter v. Sallie Mae (In re Carter)*, 517 B.R. 870 (Bankr. N.D. Ill. 2014); *Coatney v. United States Dep't of Educ. (In re Coatney)*, 345 B.R. 905 (Bankr. C.D. Ill. 2006).

availability of a repayment program, her plea to this Court may be her last chance to obtain relief from a crushing financial quagmire.

While the federal repayment plans are ultimately inapplicable, they help the Court in determining how much Modeen could reasonably pay. If still federal loans, then she would be eligible for five different repayment programs. Under the Income-Based Repayment Plan ("IBR"), Defendant's monthly payment would be determined by applying her tax filing status, AGI, family size, geographical area, and estimated income growth.[8]

Though Modeen's Schedules imply she could not make payments of $200 per month, her testimony suggests otherwise. Modeen testified her daughter recently graduated from high school and intends to pursue higher education but has not yet started classes. She is unemployed, lives at home, and does not contribute to household expenses. She is afflicted with lupus but has medication for the condition and can generally lead a normal life. As noted, courts criticize debtors who claim expenses for adult live-in children in the context of student loan dischargeability. At least one has reasoned "[i]t is unreasonable to expect creditors . . . to remain unpaid to any extent while the Debtor is supporting any adult children in her home." *In re Logan*, 263 B.R. at 800.[9]

---

[8] *See generally* https://studentloans.gov/myDirectLoan/repaymentEstimator.action.

[9] *See also Williams v. Educ. Credit Mgmt. Corp. (In re Williams),* 301 B.R. 62, 73 (Bankr. N.D. Cal. 2003) (finding that adult son's health care is not an expense that can be included in minimal standard of living consideration); *Educ. Credit Mgmt. Corp. v. Buchanan,* 276 B.R. 744, 752 (N.D. W. Va. 2002) ("If given the choice between giving

Under the reasoning in *Logan*, this Court finds it is not reasonable for Modeen to delay payment on the student loan while she supports her adult daughter. It is unfortunate her daughter must contend with a serious illness, but she testified the daughter's medicine is working well. Neither party has suggested the daughter cannot work because of her condition. Even if the daughter found a minimum wage, part-time job, she could comfortably contribute at least $200 per month.[10] Once her daughter moves out, Defendant's expenses will presumably decrease.

At trial, Plaintiff testified he had calculated alternate repayment plans. He represented a 15-year repayment term at 5.5% interest would result in a $280 per month payment. That monthly payment amount is close to the repayment options that would have been available to Modeen if the federal repayment programs applied.

Under the federal repayment plans, monthly payments would be recalculated annually based on changes in her income and any remaining debt would be forgiven after 25 years.

---

money to their creditors or their legally independent children, undoubtably most debtors would choose their children. Were this allowed, few debtors would be adjudged capable of repaying their debts.*"); but see Grove v. Educ. Credit Mgmt. Corp. (In re Grove)*, 323 B.R. 216, 229 n.5 (Bankr. N.D. Ohio 2005) ("[T]he U.S. Department of Education generally expects parents to contribute to the cost of college education for their adult children between the ages of 18 and 24 . . . . For example, to be deemed 'independent' a student must generally be married, over twenty-four, orphaned, have dependents of his or her own, or be enrolled in a masters or doctorate program.").

[10] Minimum wage in Wisconsin is currently $7.25. If her daughter worked 20 hours per week, her bi-weekly pay would be about $266.

The Court finds it would not be an undue hardship on Modeen to pay back some portion of the debt on an income-based repayment basis. Payment shall be made on the following terms:

1. The interest rate shall be 5%.

2. The AGI from Modeen's 2017 tax return shall be reduced by any distribution from her Individual Retirement Account to establish the Court-adjusted AGI.

3. Modeen's Tax Filing Status shall be used. Based on the 2017 return, her status is Head of Household.

4. The term of the repayment period shall be 154 months.

5. The monthly payment shall be recalculated each year based on income, tax filing status, and family size. The first payment is due July 1, 2018, with subsequent monthly payments due on the 1st of each month adjusted and effective on July 1, 2019, and on that day every 12th month thereafter.

6. As long as Modeen's daughter is under the age of 21 and lives with Modeen as a dependent, she may be included in the computation of family size; provided, however, that if such daughter is not a full-time student by December 2018, the sum of $2,400 shall be added to Modeen's Court-adjusted AGI for the purpose of payment calculation.

Based on such calculations using the U.S. Department of Education Federal Student Aid Repayment calculator, the monthly payment amount shall be $208 commencing July 1, 2018, adjusted annually as provided herein. The

Court will also order any unpaid debt on the student loan be discharged if the debt has not been repaid in full after 20 years without further order from this Court.

## CONCLUSION

Modeen has failed to demonstrate an undue hardship for a full discharge under *Brunner*. Her Schedules suggest she cannot meet a minimal standard of living, but it also seems some of her expenses could reasonably be reduced. Even with a reduction in expenses, however, Defendant will not be able to make the full payment on the loan when due. Debtor is granted a partial discharge to give her the opportunity to satisfy the portion of the loan she can pay.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: June 8, 2018

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge